

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

February 9, 1940

Honorable T. O. Walton, President,
Agricultural & Mechanical College
of Texas
College Station, Texas

Opinion No. O-1915

Dear Sir:

Re: Right of materialmen who furnish material for construction of public buildings.

Your letter of January 30, 1940, making inquiry of this department with respect to the claim of certain parties for material furnished in connection with the construction of certain buildings at your institution, received, and the following quotation is taken therefrom:

"On November 7, 1938 a contract was executed by and between Curtis Electrical Company, (Charles E. Curtis, President) of Austin, Texas, a corporation created and operating under the State laws of the State of Texas, party of the first part and the Agricultural and Mechanical College of Texas of College Station, Texas, acting by and through its Board of Directors, party of the second part. This is a contract for furnishing and installing electrical wiring and equipment in twelve dormitory buildings and one dining hall building on the campus of the A. & M. College at College Station, Texas, work on which was substantially completed in September, 1939.

"We have just received a letter from The Okonite Company of Chicago, Illinois, notifying us of their claim against the Austin Electrical Supply Company for materials furnished the Curtis Electrical Company for this project. We attach a copy of The Okonite Company's letter covering this claim in which it quotes a telegram from the Curtis Electrical Company by Charles E. Curtis, President, guaranteeing payment of the materials sold to the Austin Electrical Supply Company for the A. & M. College project.

You will note that The Okonite Company files its claim against the Curtis Electrical Company for the unpaid account against the Austin Electrical Supply Company for materials furnished the former for the A. & M. College project. We also attach a copy of the contract provisions relating to liens and claims.

"Will you please advise us at the earliest possible moment whether or not we should withhold payment to the Curtis Electrical Company for the final estimate on this contract until the Curtis Electrical Company furnishes the College a release or waiver of lien or a receipt for payment in full from The Okonite Company for all materials furnished for the project covered by the contract. We know, of course, that where claims are filed with the College against the contractor, that payment of sufficient funds to cover the claims must be withheld until the claims have been satisfied, but we do not know whether this applies to claims filed against contractors for materials furnished to the contractor through a third party as appears to be the case in this instance.

"We should also like to have you advise us whether or not, before making final settlement to the contractor on a contract of this type, we should require the contractor to furnish us with a certificate from the County Clerk of this County to the effect that no liens or claims have been filed in the County Clerk's Office against the contractor or the College for materials and/or labor used in connection with the contract."

The letter which you enclose from The Okonite Company to you is as follows:

"Confirming our telephone advice we attach copy of our telegram giving $2452.55 as the total claim against the Austin Electrical Supply Company due Hazard Insulated Wire Works, Division of The Okonite Company, and $92.18 due The Okonite Company.

"The facts in the case are as follows:

"On May 20, 1939 we received through our Dallas office an order from the Austin Electrical Supply Company for electrical wires and cables to be used in connection with some work being done at your University by the Curtis Electrical Co. We advised our Dallas office that we would have to have an up-to-date financial statement from the Austin Electrical Supply Company before we would ship the material.

"On May 22, 1939, we received the following telegram from the Curtis Electrical Co.:

"REGARDING FINANCIAL STATEMENT OF THE AUSTIN ELECTRICAL SUPPLY COMPANY THEY STATE THIS CAN BE SUPPLIED WITHIN FEW DAYS. WE MUST HAVE WIRE A&M COLLEGE IMMEDIATELY THEREFORE WE WILL GUARANTEE PAYMENT WITHIN CASH DISCOUNT PERIOD. SEE OUR RATING LATEST DUN & BRADSTREET BOOK. MAKE SHIPMENT TODAY NOTIFY BY WESTERN UNION IMMEDIATELY.

> CURTIS ELECTRICAL COMPANY
> BY CHAS. E. CURTIS, PRESIDENT"

"On the strength of the guarantee contained in the foregoing telegram we shipped the merchandise direct to your University and charged same to the account of the Austin Electrical Supply Company.

"We completed delivery of the entire order, and the unpaid balance at this time is $2544.73 which includes $2452.55 due the Hazard Insulated Wire Works, Division of The Okonite Company, and $92.18 due The Okonite Company.

"You should understand that Hazard Insulated Wire Works is simply a division of The Okonite Company and not a separate company or corporation.

"We have not been able to collect this balance from either the Austin Electrical Supply Company or Curtis Electrical Co. and we learned last Saturday morning that the Curtis Electrical Co. has furnished your architects final estimates on this job with receipts or waivers covering all materials, including a waiver from the Austin Electrical Supply Company.

"We believe that with the information we

have given you, you will be in a position to
demand that the Curtis Electrical Co. either
furnish you a waiver or receipt from us, or
give you an order to pay us our balance. We
have never heard of any dispute as to this
balance and we cannot understand why the Cur-
tis Electrical Co. or the Austin Electrical
Supply Company have not paid this account in
full long ago, since Mr. Chas. E. Curtis, from
the information that he personally has given us,
is a partner in the Austin Electrical Supply
Company and is president of the Curtis Electri-
cal Co.

"We trust therefore that you will withhold
payment from the Curtis Electrical Co. in the
sum of $2544.73 until you are provided with a
receipt or release direct from us, or until you
receive an order from the Curtis Electrical Co.
directing you to pay that sum of money to us.
Unless the matter is handled in that way, we do
not feel secure in the payment of our account."

You likewise enclosed the following excerpt from
your contract with the Curtis Electrical Company for the
construction of the electrical work on the buildings into
which the material furnished by The Okonite Company was
used:

"EXCERPT FROM THE CONTRACT DATED NOV.
7, 1938, BETWEEN THE CURTIS ELECTRI-
CAL COMPANY AND THE A. & M. COLLEGE
OF TEXAS FOR ELECTRICAL WORK ON TWELVE
DORMITORIES AND ONE DINING HALL

"It being understood that the final pay-
ment shall be made within ten days after this
contract is completely finished, with the ex-
ception of ten per centum of total contract
price which (at option of Owner....) shall be
held for 30 days, for protection of labor, as
provided by law; provided, that in each of the
said cases the Architect shall certify that all
the work upon the performance of which the pay-
ment is to become due has been done to their
satisfaction; provided, further, that before
each payment, if required, the Contractor....
shall give the Architect good and sufficient
evidence that the premises are free from all

liens and claims chargeable to the said Contract-
or...., and, further, that if at any time there
shall be any lien or claim for which, if estab-
lished, the Owner....or the said premises might
be made liable, and which would be chargeable to
the said Contractor...., the Owner....shall have
the right to retain out of any payment then due
or thereafter to become due, an amount sufficient
to completely indemnify it against such lien or
claim...., until the claim shall be effectually
satisfied, discharged or cancelled. And should
there prove to be any such claim....after all
payments are made, the Contractor....shall re-
fund to the Owner....all moneys that the latter
may be compelled to pay in discharging any lien
on said premises made obligatory in consequence
of the former's default. And it is further un-
derstood and agreed that the Contractor....shall
and will pay off and satisfy all claims of sub-
contractors or others for labor or material fur-
nished upon said building and which may be found
to be justly due and owing, whether or not the
same can be established as a lien against said
property for which said property or the Owner...
would be liable; it being the true intent and
meaning hereof that the Contractor....shall pay
off and satisfy all bills incurred for labor and
material in the erection of said building and
found to be justly due and owing, whether estab-
lished as liens or not." (Underscoring ours)

It is made very plain from the foregoing that the
material furnished by The Okonite Company was furnished to
the contractor and used in the buildings covered by its con-
tract. The telegram of the Curtis Electrical Company to The
Okonite Company is certainly sufficient to make it liable for
the payment of this material. When this fact is taken in con-
nection with your contract with the Curtis Electrical Company,
and especially the underscored portion thereof, we have no
hesitancy in advising you that you should withhold payment to
the Curtis Electrical Company of the final estimates on this
contract until the Curtis Electrical Company furnishes you
a release, or a receipt of payment in full from The Okonite
Company for its material furnished for the project covered
by the contract.

Article 5472a provides:

"That any person, firm or corporation, or

trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements; provided, such person, firm, corporation, or stock association, shall, before any payment is made to such contractor, notify in writing the officials of the State, county, town or municipality whose duty it is to pay such contractor of his claim."

Article 5472b provides:

"That no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants, due said contractor, but shall retain enough of said moneys, bonds or warrants to pay said claim, in case it is established by judgment in a court of proper jurisdiction."

The foregoing Articles govern the fixing of claims for materials furnished in the construction of permanent improvements in this State. It has been held that these statutes must be given a liberal and not a strict construction. Smith v. Texas Co., 53 S. W. (2) 774.

Certainly, these statutes under the above rule of construction are sufficient to protect any person, firm or corporation who furnished material to a contractor under circumstances such as these here under consideration. Wilson vs. Hinton et ux, 116 S. W. (2) 365. These statutes were intended to give additional security to the party furnishing the material, and should be construed to accomplish such end.

As to the second question you ask you are advised that it is the opinion of this department that you should not require the contractor to furnish you with a certificate from the County Clerk of your county to the effect that no liens or claims have been filed in the County Clerk's office against the contractor or the college for material and labor furnished in connection with the contract. The contract was for a public improvement, and a party who furnishes material or labor would have to proceed under the above Articles to secure a lien on the funds of the contractor. And there is no provision in said statutes providing for the filing with the County Clerk of their claims. Furthermore, it has been

specifically held that no lien can be fixed against public property.  29 C. J. 483, § 22, from which we quote, sustains this view:

"PUBLIC PROPERTY.--Upon grounds of necessity and public policy, buildings, grounds, improvements and works used for and devoted to public purposes are not within the operation of nor subject to mechanics' or materialmen's liens, unless, of course, they are expressly made subject thereto by law.  Indeed the Constitution provides that

"'The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor.  Fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, . . .'

"Accordingly, it has been held that a mechanic's lien cannot be fixed on a courthouse and public square, a city hall, a school building, a lot in a cemetery dedicated and held for sepulture, or public works such as highways, streets and pipe lines . . . ."

Since there can be no lien created against public property, we can see no reason for requiring a certificate of the contractor that no such liens have been recorded before payment is made to him.

Trusting that the above answers your questions, we are

Very truly yours,

APPROVED FEB 9, 1940

ATTORNEY GENERAL OF TEXAS

/s/ W. F. Moore
FIRST ASSISTANT
ATTORNEY GENERAL

By /s/ Grover Sellers

Grover Sellers
Assistant

GS-MR:bb